<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTOPHER B.**,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>　　　　　　　Defendant. | Civil Action No. 23-21261 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Christoper B.'s[1] appeal of an Administrative Law Judge's (ALJ) decision regarding his application for Child Insurance Benefits (CIB) under Title II of the Social Security Act, 42 U.S.C. § 402 *et seq*.[2] (ECF No. 1; "Moving Br.," ECF No. 4.) The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

The Court has carefully considered the parties' submissions[3] and the administrative record and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

---

[1] The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.
[2] The matter was initially filed by Plaintiff's mother. Plaintiff has now reached the age of majority and pursues this appeal on his own behalf.
[3] Defendant and Plaintiff sought leave to file a sur-reply and sur-sur-reply, respectively and attached their proposed briefs. *See* ECF Nos. 10, 11. The Court grants those requests and has considered the supplemental briefs.

1

I.       **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's mother Lori was awarded social security disability benefits in June 1990. (ECF No. 3, Administrative Record ("AR") at 13.) Plaintiff was born in 2002 and adopted by Lori and her husband in 2003. (*Id.* at 72.) Plaintiff's mother requested an application for a Social Security card for Plaintiff via telephone in 2005 (*id.* at 220), which the Social Security Administration ("SSA", or "the Commissioner") processed in March 2006, (*id.* at 218).

On February 6, 2019, Plaintiff's mother filed an application for CIB on Plaintiff's behalf, when he was 17 years old. (*Id.* at 132–33.) The SSA granted the application and awarded Plaintiff CIB retroactive to February 2018. (*Id.* at 43–46.) Plaintiff received an initial lump sum payment of $9,796.00 for February 2018 through March 2019 and was entitled to $714.00 in monthly payments thereafter. (*Id.* at 43.) On June 20, 2019, Plaintiff's mother sought reconsideration, arguing that Plaintiff was entitled to receive benefits dating back to at least 2006. (*Id.* at 53–55.) On reconsideration, the SSA affirmed its initial determination as to Plaintiff's entitlement. (*Id.* at 70–75.) Plaintiff's benefits terminated in January 2020, following Plaintiff's eighteenth birthday. (*Id.* at 56–58.)

An administrative hearing before an ALJ was held telephonically on April 26, 2021. (*Id.* at 23–42.) At the hearing, Plaintiff's counsel argued that by failing to inform Plaintiff's mother that Plaintiff was entitled to CIB following her application for his Social Security card, the agency provided "misinformation," thus entitling Plaintiff to an earlier "deemed filing" date. (*Id.* at 31–36.) After the hearing, Plaintiff's counsel submitted a letter to the ALJ, noting that Plaintiff's mother's "initial contact regarding Christopher took place on 2/10/05," and "contact on that date constitute[d] a 'deemed filing'" of Plaintiff's CIB application. (*Id.* at 181.)

2

In a May 16, 2022 decision, the ALJ concluded that the earliest possible date of Plaintiff's entitlement to benefits based on the February 6, 2019 CIB application is February 2018. (*Id.* at 10–22.) First, the ALJ found that when Plaintiff's mother applied for Plaintiff's Social Security card, "there was no indication of written intent to claim benefits for [Plaintiff]" and that an application for a Social Security card is neither a "protective filing" nor a "lead." (*Id.* at 17.) Based on his review of the record, the ALJ further found an absence of any inquiry by Plaintiff's mother as to CIB prior to February 6, 2019 as well as any deterrent effect on her ability to file for CIB due to misinformation. (*Id.* at 18.) Accordingly, the ALJ concluded that February 2018 was the correct entitlement date. (*Id.* at 19.) On August 28, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (*Id.* at 1–6.)

## II.   LEGAL STANDARD

On appeal, this Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). In reviewing applications for benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted). In other words, substantial evidence "may

be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks omitted).

### III. DISCUSSION

#### A. APPLICABLE LAW

Under Title II of the Social Security Act, the child of an individual entitled to social security benefits may receive CIB. 42 U.S.C § 402(d). To be eligible, any non-disabled child must file an application and be dependent on the parent, unmarried, and under the age of eighteen or be a full-time elementary or secondary school student under the age of nineteen. *Id* § 402(d)(1)(A); 20 C.F.R. § 404.350(a)

##### 1. Application Date

There are several ways to determine when a claimant becomes eligible to receive CIB. First and foremost is the date of their application for such benefits. An eligible child applicant may receive retroactive benefits for up to twelve months prior to the date of their application and monthly benefits thereafter until their 18th birthday, or the age of 22, if under a disability. *See* 42 U.S.C. §§ 402(d) and (j)(1)(A); 20 C.F.R. § 621(a)(1). An application is considered filed "on the day it is received by an SSA employee at one of [SSA's] offices or by an SSA employee who is authorized to receive it at a place other than one of [its] offices." 20 C.F.R. § 404.614.

Under these provisions, Plaintiff's application was deemed "filed" in February 2019, and he received retroactive benefits dating back to February 2018.

##### 2. Protective Filing Date

The effective date of an application may be established before its actual filing, however, through what is known as a "protective filing." "If certain criteria are met, protective filing is established on the date SSA receives a written statement of intent to file for disability insurance

benefits . . . ." *See* Program Operations Manual System (POMS), GN 00204.010(A)(1).[4] A protective filing is made by taking such steps as listing the child's name on the parent's application. *See id.* 00204.010(C)(3) ("Naming a child on a Title II application establishes a protective filing for the child."). In other words, if a person files for social security benefits and names a child on their application, the date of the application becomes a "protective filing" date for CIB.

Therefore, if Plaintiff's mother had listed Plaintiff on her application for disability benefits in 1990, then the date of her application would also be considered the date of Plaintiff's application for CIB. This of course is impossible because Plaintiff was not adopted until 2003.

3. Lead Date

The third method is a "lead" on a protective filing date. A Title II lead is a "written or oral indication of *potential entitlement* where there is no intent to file by the party who furnishes the lead information." POMS § GN 00202.020 (emphasis added). For example, if an applicant states "that they have someone living with them who they are not listing on the application," SSA's policies instruct employees to "contact the co-habitant to determine if they are potentially eligible for benefits and if they wish to file." *Ovalle v. Kijakazi*, Civ No. 20-5, 2021 WL 5868984, at *3 (S.D. Tex. Oct. 7, 2021). "Under these circumstances, the retirement applicant's filing date serves as the protective filing date for the person who is a 'lead.'" *Id.*

4. Misinformation Date

Lastly, if an SSA employee has provided the claimant with incorrect information, then the application may be deemed to have been filed as of the date the SSA employee provided the incorrect information. 20 C.F.R. § 404.633(a)-(g). "If someone inquires about SSA benefits and

---

[4] "POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims" and although POMS guidelines warrant respect, courts in this district have held that they do not have the force of law. *See, e.g., Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996); *Bordes v. Comm'r Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *Burke v. Comm'r of Soc. Sec.*, Civ. No. 19-14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020).

an SSA employee gives them misinformation about their eligibility, which discourages them from filing, a later application can be deemed retroactive to the date of the misinformation." *Ovalle*, 2021 WL 5868984, at *4. A claim based on "misinformation" "must contain information that will enable the [SSA] to determine" if it did provide misinformation regarding eligibility for benefits. 20 C.F.R. § 404.633(f).

    **B.**    **ANALYSIS**

The ALJ framed the issue before him as "what the actual entitlement date should be." (AR at 26.) In this way, the ALJ had to determine which date constituted the effective date of Plaintiff's entitlement to CIB, i.e., February 2019 (the date Plaintiff's mother filed a CIB application on his behalf), June 1990 (the date Plaintiff's mother filed her own application for benefits), March 2005 (the date Plaintiff's mother sought a Social Security card for Plaintiff), or the date the SSA allegedly provided misinformation. Therefore, the Court reviews whether the ALJ's finding as to the February 2018 entitlement date is supported by substantial evidence in the record. *See Bolton v. Colvin*, Civ No. 16-5493, 2017 WL 5565670, at *4 (D.N.J. Nov. 20, 2017) ("We review whether the ALJ had substantial evidence to determine that Plaintiff did not express a written intent to file for J.B.'s benefits until February 18, 2010."). The Court concludes that it is.

First, the record, indeed Plaintiff's mother's own testimony at the administrative hearing, supports the determination that no application on Plaintiff's behalf was filed prior to February 6, 2019. (AR at 35.) Second, Plaintiff is not entitled to an earlier "protective filing" date based on his mother's 1990 Title II application because Plaintiff was not named, or even merely referred to, and could not have been, as Plaintiff was adopted in 2003, thirteen years later.

The ALJ also considered Plaintiff's argument that his mother's application for his Social Security card constituted a "protective filing." (*Id.* at 14.) Reasoning that the form application for

6

a Social Security card "does not include a place for a statement regarding the intent to file an application for benefits," the ALJ concluded that such an application did not indicate an "intent to claim benefits for [Plaintiff]." (*Id.* at 14, 18.) Thus, the ALJ found that there was no protective filing date in this case.

As such, Plaintiff argues on appeal that the application for his Social Security card in 2005 constituted a "lead" for a protective filing and he is entitled to the protected filing date consistent with that inquiry. (Moving Br. at 4–5.) The application for a Social Security card, however, is not a "lead" because it does not indicate or even suggest a potential entitlement to benefits. Specifically, Plaintiff's application for a Social Security card did not indicate or suggest that he may be entitled to CIB benefits. This requirement is evident from the following example from the SSA's own POMS:

> Sally Smith (NH) files for retirement benefits and states that they were married to Charlie Smith in 1958 and divorced in 1971. Sally states that Charlie is 66 years old. The information provided by Sally could be a lead for divorced spouse's benefits for Charlie (BIC-BR) on Sally's SSN. This is also a lead for Charlie on their own SSN if they have not already filed for retirement insurance benefits (RIB-BIC A).

POMS, GN 00202.020(B)(1).

The "Processing Leads" POMS also provides examples of forms that meet the definition of a lead. These include "Form SSA-721, Statement of Death by Funeral Director, that identifies a survivor of the deceased wage earner" and "Form SSA-1724, Claim for Amounts Due in the Case of a Deceased Beneficiary, that identifies a survivor or survivors of the deceased wage

earner." *Id.* at 00202.020(F).  Because Plaintiff's application for a Social Security card does not indicate or even suggest potential entitlement, it cannot qualify as a lead.[5]

Finally, the ALJ found that there was no evidence in the record that Plaintiff's mother received misinformation prior to the February 2019 application for CIB.  (AR at 17.)  Plaintiff argues before this Court that when his mother applied for his Social Security card, the SSA should have known that Plaintiff may have been entitled to CIB and advised his mother to file a CIB application on his behalf.  (*Id.* at 18.)  But Plaintiff does not allege that Plaintiff or his mother inquired with the SSA about Plaintiff's eligibility and were misled or given incomplete information.  Rather, Plaintiff argues that the SSA "should have been aware."  (Moving Br. at 8.)  Because the record is clear that neither Plaintiff nor his mother inquired as to CIB entitlement prior to 2019, Plaintiff did not satisfy his burden to show misinformation that would entitle him to an earlier effective date.  *See* 20 C.F.R. § 404.633(c) ("The misinformation must have been provided to you in response to a specific request . . . .").

The Court recognizes that it is reaching an unfortunate result that Plaintiff will not be receiving the entirety of benefits he might have otherwise been entitled to.  The Court, however, is constrained by the standard of review.  Because substantial evidence supports the ALJ's findings that the earliest intent to file a claim for Plaintiff was February 6, 2019, his decision must be affirmed.

---

[5] The Court is mindful of the practical implications were it to find that an application for a Social Security card qualifies as a lead: it would obligate the SSA to investigate whether everyone applying for a card is entitled to benefits.  *See Hartzell v. Astrue,* 741 F. Supp. 2d. 645, 651 (D.N.J. 2010) (explaining that the court has not found "anything in the relevant statutes, implementing regulations, or case law, that supports the notion that the Commissioner has an independent duty to seek out those who have not inquired about available benefits," and concluding that whether a "more proactive administrative duty should exist[] is a question of policy" and is therefore "for Congress by statute, or the relevant agency by proper regulation, and not this Court to impose it").

## IV.  CONCLUSION

For the reasons stated above, the ALJ's decision is **AFFIRMED**.  An appropriate Order will follow.


Date: **October 30, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
